

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SAMMY ANDERSON  and | ) | |
| | ) | Case No.:  11-13541-JDW |
| MELINDA ANDERSON, | ) | |
| | ) | |
| Debtors. | ) | Chapter   13 |

## MEMORANDUM OPINION AND ORDER GRANTING
## <u>MOTION TO MODIFY CONFIRMED PLAN (DKT. #60)</u>

This case is before the Court on the *Motion and Notice to Modify Confirmed Plan* (the "Motion")(Dkt. #60) filed by debtors Sammy and Melinda Anderson (the "Debtors") in the above-styled case. In the Motion, the Debtors propose to modify their confirmed plan by surrendering a vehicle to Canon Motor Company (the "Creditor") and

ceasing payments to the Creditor under the plan.  The Creditor filed a response objecting to the Motion and the proposed modification (the "Response")(Dkt. #64).   The Creditor contends that the Debtors' proposed modification should be denied because the Debtors have not offered proof of a change of circumstances to warrant a change in the confirmed plan.

A hearing on the Motion was held on August 18, 2015, at which time counsel for the Debtors, Edward Lancaster, and counsel for the Creditors, John Simpson, both appeared and presented argument.  At the conclusion of the hearing, the Court took the matter under advisement.  The Court has considered the pleadings, briefs, and the law, and has determined that the Motion is due to be granted.

## I.  JURISDICTION

This Court has jurisdiction of the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151 and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O).

## II. FACTS[1]

The Debtors filed their chapter 13 bankruptcy petition on August 5, 2011 (Dkt. #1). The Debtors then filed a proposed chapter 13 plan (Dkt. #12), which was subsequently amended (as amended, the "Plan")(Dkt. #14). The Plan provided that the Debtors would retain a 2002 GMC Envoy (the "Truck") and make monthly payments of $167.58 to the Creditor. The Truck secured an indebtedness owed to the Creditor in the approximate amount of $8,468, and the Plan provides for payment of the Creditor's claim in full, plus 7% interest. On December 12, 2011, the Plan was confirmed (Dkt. #37), and the Debtors have made payments pursuant to the confirmed Plan since that time.

On June 22, 2015, the Debtors filed the Motion, proposing to surrender the Truck in full satisfaction of the Creditor's claim, and to discontinue payments to the Creditor. The Creditor filed a response objecting to the proposed modification. The parties have stipulated to the fact that the Truck has a transmission problem.

At the hearing, the Debtors stated that the Truck, as a result of ordinary wear and tear, needs a new transmission and that the Debtors

---

[1] The facts in this case are undisputed.

desire to surrender it.   While conceding there is no categorical bar to post-confirmation modifications, the Creditor argued that there is a good faith requirement, and the Debtors have failed to meet this requirement.   The Creditor further argued that the Debtors must show that there has been a substantial, unforeseeable change in circumstances in order to modify the confirmed plan.

## III. ANALYSIS

The Bankruptcy Code[2] allows, in some circumstances, modifications to be made to a plan after confirmation.   "Post-confirmation modifications" are allowed because "during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly."   *Meza v. Truman* (*In re Meza*), 467 F.3d 874, 877 (5th Cir. 2006).   A plan may be modified "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim," for the reasons listed therein. 11 U.S.C. § 1329(a).   The burden of proof is on the party seeking modification. *In re Hernandez*, 282 B.R. 200, 204 (Bankr. S.D. Tex. 2002).   Because of the binding effect of confirmation,

---

[2] The "Bankruptcy Code" is defined as Title 11 of the United States Code. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

any party seeking to modify the plan must show that the modification is permitted by § 1329. 11 U.S.C. § 1327(a).

The opinions on post-confirmation modifications are numerous and diverse. Before applying the law to the facts at hand, the Court will analyze the different approaches taken by other courts.

## A.  The Fifth Circuit does not require proof of change in circumstances for plan modifications.

A threshold issue, and one that divides many courts, is the effect that confirmation has on subsequent modifications. At the heart of this debate, more often than not, is the interplay between § 1327 and § 1329[3] and the doctrine of *res judicata*. Some courts have held that, because of *res judicata*, a party must show proof of a change in circumstances in order to modify a plan after the confirmation date. *Arnold v. Weast* (*In re Arnold),* 869 F.2d 240, 243 (4th Cir. 1989); *In re Fitak,* 121 B.R. 224, 227-78 (Bankr. S.D. Ohio 1990). Conversely, other courts have rejected this reasoning and held that § 1329 does not impose a "change in circumstances" requirement. *See In re Witkowski*, 16 F.3d 739, 744 (7th Cir. 1994); *Meza*, 467 F.3d at 1269; *Barbosa v.*

---

[3] Section 1327(a) states that a confirmed plan will "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Section 1329(a), on the other hand, states that a confirmed plan may be modified in certain ways.

*Solomon*, 235 F.3d 31, 38 (1st Cir. 2000); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 192 (6th Cir. 1998); *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. B.A.P. 1997).

Here, this threshold issue is easily resolved because the Fifth Circuit Court of Appeals has explicitly held that no unanticipated, substantial change in circumstances is required to modify a confirmed plan. *Meza*, 467 F.3d at 877-78. Many courts have concluded that such a standard cannot be found in § 1329. Rather, the plain language of § 1329 conveys the "absolute right to seek a modification." *Witkowski*, 16 F.3d at 744.

Even prior to *Meza*, this Court previously rejected the view that *res judicata* bars subsequent modifications. *Williams v. First Nat'l Bank (In re Williams)*, 108 B.R. 119, 121 (Bankr. N.D. Miss. 1989). If *res judicata* barred post-confirmation modifications, then § 1329 would be rendered meaningless. *In re Jock,* 95 B.R. 75, 77 (Bankr. M.D. Tenn. 1989). And rather than conflicting with one another, § 1329 and § 1327 actually work in harmony. Judge Keith Lundin explained this harmony as follows:

> Section 1327(a) is not a limit on permitted modifications of a confirmed Chapter 13 plan; rather, it is a statutory description of

6

the effect of a confirmed plan or of a confirmed modified plan.  A confirmed Chapter 13 plan binds the debtor (and all creditors), 11 U.S.C.S. § 1327(a), but a confirmed plan "may be modified…at any time after confirmation of the plan but before the completion of payments under the plan…" 11 U.S.C.S. § 1329(a).  The confirmed plan binds the debtor unless and until it is modified, and then the modified plan "becomes the plan," 11 U.S.C.S. § 1329(b)(2), and the modified plan has the effects described in § 1327. Sections 1322(a), (b), 1323(c) and 1325(a) are the appropriate sources of the limits on modification under § 1329. *See* 11 U.S.C.S. § 1329(b).

*Id.*

If Congress meant for a "change in circumstances" standard to be applied, it would have included language to that effect in the modification provision of § 1329.  For example, Congress included a provision that requires a debtor seeking a hardship discharge to show that there has been "circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1).  No similar language was included for post-confirmation modifications.

## B.  The case law shows that two main views have developed regarding post-confirmation modifications to surrender collateral.

While numerous courts have examined whether collateral may be surrendered through a post-confirmation modification, the Sixth Circuit has been the only Circuit Court of Appeals to address the issue.  In *In re Nolan*, the Sixth Circuit held that the Bankruptcy Code prohibits

post-confirmation modifications to surrender collateral. *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 535 (6th Cir. 2000). The majority of bankruptcy courts outside of the Sixth Circuit have disagreed with the Sixth Circuit and followed a different approach. These courts have found that the Bankruptcy Code does allow post-confirmation modifications to surrender collateral, but such modifications are considered on a case-by-case basis for good faith and other requirements. The competing views are considered below.

### 1. Minority view (*Nolan* and others): modifications to surrender collateral after confirmation are not allowed.

The facts in *Nolan* were comparable to the facts before this Court. The debtor's plan was confirmed, which included Chrysler's claim secured by a vehicle. *Id.* at 529. Later, the debtor sought to surrender the vehicle to Chrysler and reclassify any deficiency claim as unsecured. *Id.*

The Sixth Circuit has been the only circuit court to grapple with this issue and it did so realizing that many bankruptcy courts have been divided by it. *Id.* at 531. The Sixth Circuit held that § 1329 does not allow a debtor to surrender collateral to the creditor after confirmation and reclassify any deficiency as an unsecured claim. *Id.* at

535.   In doing so, the *Nolan* court rejected what was then the minority approach, represented throughout the opinion by *Jock*.  *Id.* at 532.  The Sixth Circuit articulated five bases for its conclusion:

1. Section 1329(a) allows the debtor to request alteration of the amount of timing of specific payments; it does not expressly allow the debtor to alter, reduce, or reclassify a previously allowed secured claim.

2. Section 1325(a)(5)(B) mandates that a secured claim is fixed in the amount and status and must be paid in full once it has been allowed. The proposed modification violated this mandate.

3. Section 1327(a) must not be interpreted, as the proposed modification required, to allow debtors to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset.

4. Because only the debtor, trustee, and unsecured claim holders can bring a motion to modify a plan, the proposed modification would be inequitable because the secured creditor could not seek to reclassify its claim when the collateral appreciates, even though the debtor can revalue or reclassify when the collateral depreciates.

5. The plain language of § 1329 is at odds with the debtor's proposed interpretation because the term "claim" and "payment" have two different meanings under the Bankruptcy Code.

*Id.* at 532-34.

Although the *Nolan* opinion does not mention § 502(j) and its effect on post-confirmation modifications, the Sixth Circuit has

subsequently revisited this issue and clarified its view.[4]   The Sixth

Circuit recognized that several courts had disagreed with the *Nolan*

opinion, and of those courts, many cited § 502(j) as the reason for doing

so.  *In re Adkins,* 425 F.3d 296, 303-04 (6th Cir. 2005).  In *Adkins*, the

Sixth Circuit reaffirmed its view, and further stated that § 502(j) is not

applicable to reclassification of claims. *Id.* at 304.   Instead, the court

held that § 502(j) may only be used to allow or disallow a claim and not

to reclassify an allowed claim from secured to unsecured. *Id.* at 305.

## 2. Majority view: modifications to surrender collateral after confirmation are allowed so long as the modification meets certain criteria.

After *Nolan*, many bankruptcy courts have disagreed with such a

narrow reading of § 1329.  The view that *Nolan* labeled as the minority

approach, has since been adopted by the majority of courts.   Most

bankruptcy courts outside of the Sixth Circuit now hold that post-

confirmation modifications to surrender collateral are allowed.  *See,*

*e.g., In re Tucker*, 500 B.R. 457 (Bankr. S.D. Miss. 2013);  *In re*

*Jefferson*, 345 B.R. 577 (Bankr. N.D. Miss. 2006);  *Hernandez*, 282 B.R.

at 200; *In re Knappen,* 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Zeider,*

---

[4] Section 502(j) allows a claim to be reconsideration "for cause…according to the equities of the case." This section
has been cited frequently in opinions on post-confirmation modifications, as discussed in greater detail *infra*.

263 B.R. 114 (Bankr. D. Ariz. 2001); *Jock*, 95 B.R. at 77.   However, courts have relied on different Bankruptcy Code sections to allow modification.

Courts that find that post-confirmation modification is not *per se* prohibited rely on § 1329(a) and § 502(j).   Generally, these courts view post-confirmation modifications to surrender collateral in two broad categories: allowed under § 1329(a), independent of § 502(j); and allowed under § 1329(a) in tandem with § 502(j).

The first position, as expressed in *Jock,* holds that § 1329(a) permits post-confirmation modification to surrender collateral. *Jock,* 95 B.R. at 76-78.   The debtor in *Jock* modified his chapter 13 plan to surrender a vehicle to the secured creditor, reclassifying the deficiency as an unsecured claim. *Id.* at 76.   The court did not mention §502(j) but rather focused solely on § 1329.[5]   The court held that §1329(a)(1), working alone, allows for post-confirmation modification to surrender collateral and to change the amount of payment that a secured creditor receives through the plan. *Id.*   Furthermore, the court noted that "§§ 1329(b) and (c) fix the statutory limits on modifications of Chapter 13

---

[5] To be clear, the court never explicitly stated that § 502(j) could not be used in this situation; the court simply did not address the applicability of § 502(j) at all.

plans after confirmation." *Id.* at 77.   Because sufficient protections are in place, the court rejected the creditor's argument that § 1327 prohibits modification of a secured claim after confirmation.   Instead of a limitation, the court in *Jock* read § 1327 as "a statutory description of the effect of a confirmed plan or a confirmed modified plan." *Id.*

Mississippi bankruptcy courts have endorsed the second position, as set forth in *Tucker* and *Jefferson*.   These courts, as well as others, have held that § 1329 and § 502(j) allow reclassification of secured claims after a plan has been confirmed. Courts adopting this view conclude that § 1329 should be read broadly to encompass post-confirmation surrender of collateral in satisfaction of secured claims; while at the same time recognizing that § 502(j) allows for reclassification of claims "for cause" and operates to smooth out any apparent tension in the Bankruptcy Code.   For example, while a confirmed plan binds the debtor and creditors (*see* § 1327(a)), fixing the claims for a certain amount and classification, collateral that is surrendered post-confirmation alters the claim that was secured by that collateral because the claim is no longer secured pursuant to § 506(a). Accordingly, § 502(j) alleviates this tension by allowing reclassification

of claims "for cause…according to the equities of the case."  Thus, the

secured creditor that receives its collateral will be reclassified to hold an

unsecured claim to the extent that the collateral is worth less than the

claim.

## C.  Post-confirmation modifications to surrender collateral are allowed under § 1329(a) and § 502(j).

After reviewing the case law and the issues at hand, this Court

now holds that a debtor who wishes to surrender collateral after the

confirmation date may do so under §§ 1329(a)(1) and (3), and 502(j).

Section 1329(a)(1) explicitly provides that a debtor may modify a plan to

"increase or reduce the amount of payments on claims of a particular

class provided for by the plan."  Section 1329(a)(3) allows a debtor to

"alter the amount of the distribution to a creditor whose claim is

provided for by the plan to the extent necessary to take account of any

payment of such claim other than under the plan."  And, § 502(j) allows

for reconsideration of claims when two standards have been met: 1)

"cause" has been shown, according to the requirements of Rule 60(b) of

the Federal Rules of Civil Procedure, and 2) the "equities of the case"

support reconsideration.  Surrendering collateral to a secured creditor

post-confirmation is authorized by these sections of the Bankruptcy Code.

Section 1329(a)(1) allows the debtor to change payments made to a particular class under the plan. Because each secured claim is generally considered to be a separate class, payments to a secured creditor may be reduced without affecting the validity of the plan. *Tucker*, 500 B.R. at 461; Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 264.1 at ¶ 18, Sec. Rev. July 14, 2004, www.Ch13online.com. The language of § 1329 thus anticipates the need to reduce payments to reflect an activity such as the surrender of collateral.

Section 1329(a)(3) also authorizes the debtor to alter the distributions made to a creditor to adjust for payments made outside of the plan. The surrender of collateral to a creditor certainly qualifies as "payment…other than under the plan." In fact, the surrender of collateral compels a change in the treatment of the creditor because a secured creditor's status changes once its collateral is abandoned from the estate. A secured creditor is only secured to the extent of the value of its interest in property that is property of the estate. 11 U.S.C. §

506(a).  The creditor's secured status would necessarily change once the collateral securing its claim has been released from the bankruptcy estate.

Furthermore, § 502(j) calls for reconsideration of a claim where "the equities of the case" so demand.  The "bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary," so a claim may be reconsidered *sua sponte*, even without a motion of an interested party. *Colley v. W. Tex. Wholesale Supply (Matter of Colley)*, 814 F.2d 1008, 1010 (5th Cir. 1987).   Section 506(a) states that a secured claim is only "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."  Because the secured creditor, after the debtor has surrendered its collateral, no longer has an interest in property of the estate its claim is no longer secured.   Therefore, law and equity both require that the claim be reclassified.  The facts presented to this Court are just such an occasion.

Modification to surrender collateral is not an absolute right, however.  The Bankruptcy Code contains certain provisions that protect against abuse.  Section 1329(b)(1) imports the good faith requirement of 1325(a)(3), which requires that a plan be "proposed in good faith and

not by any means forbidden by law" in order to be confirmed.  Under

1329(b)(1), this standard is also required for plan modifications.  To

determine good faith, the Fifth Circuit has adopted a totality of the

circumstances test that examines the following factors:

> (1) the reasonableness of the proposed repayment plan,
>
> (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code,
>
> (3) whether the debtor genuinely intends to effectuate the plan,
>
> (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities,
>
> (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay,
>
> (6) whether the plan reflects the debtor's ability to pay, and
>
> (7) whether a creditor has objected to the plan.

*Suggs v. Stanley (In re Stanley),* 224 Fed.Appx. 343, 346 (5th Cir.

2007)(internal quotations omitted).

Good faith is not the only requirement for modifying a confirmed

plan and reclassifying a claim.  Reconsideration of a claim requires

separate qualifications.  The "cause" standard of Rule 60(b) provides a

high bar to the use of § 502(j).  If that hurdle is overcome, then the court

must also determine whether it is equitable to reconsider the claim.  All

of these limitations work to weed out any unnecessary or unmeritorious modification attempts.

Additionally, creditors are further protected by adequate protection payments under § 507(b). Under § 507(b), a creditor may be entitled to a "superpriority" claim if the property declines in value between the time that adequate protection is provided and the time that the property is returned to the creditor. 4 Collier on Bankruptcy 507.14 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Once collateral is surrendered and a secured claim is extinguished, the secured creditor has a right to petition for a priority claim on the deficiency in the value of the collateral. *See Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co., Inc.),* 991 F.2d 682, 685 (11th Cir. 1993); *Grundy Nat'l Bank v. Rife*, 876 F.2d 361, 363-64 (4th Cir. 1989); *Jefferson,* 345 B.R. at 583; *In re Miller*, 2002 WL 31115656, at *6 (Bankr. M.D.N.C. Apr. 19, 2002).

The Court's holding promotes a plain reading of the Bankruptcy Code as well as a practical approach to debtor-creditor relations in a chapter 13 plan. If denied the right to surrender and reclassify a secured claim, the debtor could simply convert to a chapter 7 and then

proceed to surrender the collateral. Alternatively, the debtor could dismiss and refile the case, surrendering the collateral under the new plan. Each method would allow the debtor to reach the same result. These realities are "further evidence that Congress contemplated modification of a Chapter 13 plan to permit the surrender of collateral to the holder of an allowed secured claim." *Jock,* 95 B.R. at 78; *In re Stone,* 91 B.R. 423, 425 (Bankr. N.D. Ohio 1988). Although the plain language of the Bankruptcy Code is clear in this regard, the Court notes that Congress's intent behind § 1329 was to facilitate successful completion of chapter 13 plans. H.R. REP. NO. 95-595, at 125 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6086. The plain language and legislative intent of § 1329 both call for a broader interpretation, one that allows debtors to surrender burdensome collateral so long as the modification meets the requirements of §§ 1322(a) and (b), and 1325(a).

To review, a debtor may modify a confirmed plan to surrender collateral to a secured creditor and reclassify any deficiency as an unsecured claim if the Court finds the following elements are present:

(1) the modification was proposed in good faith and conforms to all other requirements of § 1325(a);

(2) there is cause to reconsider the claim, according to the standard set forth in Rule 60(b) of the Federal Rules of Civil Procedure, and

(3) the "equities of the case" warrant reconsideration.

The party moving to modify the confirmed plan has the burden of proving all of the elements previously mentioned.  Courts in the Fifth Circuit have handled the good faith requirement consistently by applying the seven *Stanley* factors.  *See Stanley,* 224 Fed. Appx. at 346. To further illustrate how the good faith requirement will be vetted in this specific context, it should be noted that a lack of good faith will be found where, prior to surrender, the debtor: abuses or neglects the collateral, fails to maintain insurance on the collateral when required, or intentionally causes a substantial decrease in the value of the collateral.  *See, e.g., In re Tucker,* 500 B.R. at 463 (holding that the debtor's failure to maintain insurance on the collateral, in disregard for the confirmation order that required insurance, was bad faith); *Miller,* 2002 WL 31115656, at *5 (holding that depreciation caused by the debtor's abuse or neglect would be considered bad faith).  The previous list is by no means exhaustive; it is merely representative of common impediments to a good faith modification.

19

### D. The Debtors' modification has been proposed in good faith, and the equities of this case call for reconsideration of the claim.

Turning to the present modification attempt by the Debtors, the Court holds that the modification is permissible under the circumstances. As § 1329(b) specifically adopts the requirements of §§1322(a) and (b), 1323(c), and 1325(a), the Court must consider all of these provisions when considering a plan modification. Here, the most important consideration is whether the modification is proposed in good faith.

Section 1329(a)(3) affirmatively requires good faith; consequently, the absence of good faith is enough to bar a proposed plan or modification. As one court has noted, "manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse." *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir. 1986).

When applying the *Stanley* factors to the facts of this case, the Court finds that the modification has been proposed in good faith. The Debtor has encountered a significant problem with the collateral that

has merited a modification of the existing plan, as allowed by the Bankruptcy Code.  The Debtors are not attempting to "abuse the spirit of the bankruptcy code," nor are they attempting to manipulate the Bankruptcy Code.  To be sure, debtors frequently surrender collateral in the course of a chapter 13 plan, when the collateral becomes more burdensome than useful.  Usually this action is allowed simply because it passes without objection.  In this case the parties all agree that the Truck's transmission needs to be repaired as a result of normal wear and tear on the vehicle.  The transmission problem is not a result of the Debtors' negligence or misconduct.  The parties also agreed that the Truck's transmission problem comes in due course and is not unexpected with an automobile of the collateral's age.  For these reasons, the Court finds that the Debtors have proposed the plan modification in good faith.

Finding that the modification is proposed in good faith, the Court must now consider whether there is "cause" to reconsider the classification of the Creditor's secured claim, and, if so, whether the "equities of the case" support reconsideration.  First, the majority of courts have tied the issue of "cause" under § 502(j) to the Federal Rules

of Civil Procedure, Rule 60(b) standard. *In re Morningstar,* 433 B.R. 714, 717 (Bankr. N.D. Ind. 2010). This approach has been cited favorably by the Fifth Circuit as well. *Matter of Colley,* 814 F.2d at 1010. Under Rule 60(b), one of the reasons giving rise to relief is "any other reason that justifies relief." FED. R. CIV. P. 60(b). Here, because the surrender of collateral demands a change in the Creditor's treatment, there is cause to reconsider the claim and relief is justified on that basis.

The second step—weighing the "equities of the case"—is a more flexible standard. Situations of this nature—where a vehicle, through no fault of the debtor, becomes particularly burdensome—are perfect candidates for the reconsideration provision of § 502(j). *See Baxter v. Americredit Fin. Services (In re Dykes),* 287 B.R. 298, 303 (Bankr. S.D. Ga. 2002); *Zeider,* 263 B.R. at 117. Here, the "equities of the case" weigh in favor of reclassification. The creditor will receive its collateral (and has received monthly payments under the Plan while the Debtors retained possession), therefore its secured status must necessarily be altered to reflect the transfer.

## IV. CONCLUSION

Accordingly, the Court finds that the Debtors may modify their confirmed plan to surrender the Truck and reclassify any deficiency of the Creditor's claim as unsecured.  The Court holds that a debtor, under §§ 1329(a)(1) and (3), as well as § 502(j), may modify a confirmed plan to surrender collateral and reclassify any deficiency as unsecured under appropriate circumstances.  The debtor must still abide by the requirements of § 1329(b) and § 502(j)—including that the modification be proposed in good faith and reconsideration of the claim only be allowed for cause and according to the equities of the case.

IT IS, THEREFORE, **ORDERED, ADJUDGED,** AND **DECREED** that the Motion is **GRANTED.**

##END OF ORDER##